629 F.2d 162
 203 U.S.App.D.C. 128, 80-2 USTC P 9554
 VALLEY FINANCE, INC. et al., Appellants,
v.
UNITED STATES of America et al.
PACIFIC DEVELOPMENT, INC., Appellant,
v.
UNITED STATES of America et al.
PACIFIC DEVELOPMENT, INC., Appellant,
v.
UNITED STATES of America et al.
 Nos. 78-1585, 79-1151 and 79-1301.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 12, 1980.
Decided July 14, 1980.
Rehearing Denied Sept. 9, 1980.
 
 1
 Walter T. Charlton, Washington, D. C., and Richard T.Sampson, Baltimore, Md., with whom E. William Tupling, Washington, D. C., was on brief, for appellants.
 
 
 2
 Daniel F. Ross, Atty., Dept. of Justice, with whom M. Carr Ferguson, Asst. Atty. Gen., Carl S. Rauh, U. S. Atty. at the time brief was filed, and Crombie J. D. Garrett, Washington, D. C., were on brief, for appellees. Charles F. C. Ruff, U. S. Atty., and Myron C. Baum, William A. Friedlander, S. Martin Teel, Jr., Attys., Dept. of Justice, Washington, D. C., also entered appearances for appellees.
 
 
 3
 Before TAMM and MIKVA, Circuit Judges and GESELL,* United States District Court Judge for the District of Columbia.
 
 
 4
 Opinion for the Court filed by District Judge GESELL.
 
 GESELL, District Judge:
 
 5
 These companion appeals were consolidated for argument with consent of counsel and will be dealt with in a single opinion. They arise from a jeopardy assessment for income taxes exceeding 4.5 million dollars made by the Internal Revenue Service ("IRS") against one Tongsun Park on January 18, 1977. The IRS seized assets of Pacific Development, Inc. ("Pacific"), a corporation wholly owned by Park, claiming that the company was a mere alter ego of the taxpayer. Pacific, incorporated in the District of Columbia in 1968, officially engages in the business of international brokerage and consulting. Park was its founder, president, and continuous sole shareholder. In an action brought under 26 U.S.C. § 7426(a)[1] and 28 U.S.C. § 2410,[2] Pacific sought return of its property and damages. The District Court upheld the seizure after finding that Pacific was not a separate entity for tax purposes but "a mere instrumentality of Park and a facade for his operations."[3]
 
 
 6
 As appellant in Nos. 79-1151 and 79-1301, Pacific challenges the District Court's factual determination of its alter ego status, claiming that such a finding is clearly erroneous on the record. In addition, it contends that the United States violated its statutory rights by failing to provide notice of deficiency, and that the absence of a prompt post-seizure hearing amounts to a violation of its right to due process of law under the Fifth Amendment to the Constitution.[4] Appellants in No. 78-1585 are various creditors of Pacific[5] who sought to challenge the seizure on the same statutory and constitutional grounds. They proceeded by separate suit against Pacific and IRS under 26 U.S.C. § 7426(a),[6] and also by attempted intervention in the main Pacific action described above. They appeal from dismissal of their separate action on jurisdictional grounds.
 
 
 7
 The two actions progressed below along distinct tracks. Pacific filed suit on April 21, 1977, while the creditors did not bring an action until some nine months later. The District Judge granted the Government's motion to dismiss the creditors' action, at the same time denying the creditors' motion to intervene as party plaintiffs in Pacific's lawsuit.[7] Following extensive discovery, the main action was tried to the Court and judgment was entered for the United States.[8] We conclude that Pacific's creditors properly were barred from maintaining suit, and find no statutory or constitutional infirmities in the action taken by the IRS as to Pacific. Accordingly, we affirm the District Court's judgment in all respects.
 
 STANDING
 
 8
 Following a lengthy investigation into the tax liability of Park, the IRS concluded that Park owed some 4.5 million dollars in personal Federal income taxes for the four-year period ending December 31, 1975. The IRS, believing that immediate action was necessary to safeguard collection of this substantial deficiency, entered a jeopardy assessment against Park on January 18, 1977. See 26 U.S.C. § 6861 (1976). Park was sent a statutory notice of deficiency within the applicable 60-day time period. 26 U.S.C. § 6861(b) (1976). He then petitioned the United States Tax Court, seeking a redetermination of the deficiency. See 26 U.S.C. § 6213(a) (1976). That action, which concerns the merits of the taxpayer's liability under the Internal Revenue Code, is still pending before the Tax Court.
 
 
 9
 Meanwhile, based on the apparent exigencies of the situation, the IRS moved quickly to ensure collection. Once demand for payment went unheeded, the IRS immediately filed notices of tax liens against the taxpayer himself and against Pacific as the "alter ego and nominee" of Park. See 26 U.S.C. § 6321 (1976).[9] It followed up this action by instituting levies or seizures of various properties belonging to Pacific, including bank account deposits, shares of stock, a life insurance policy and several automobiles. See 26 U.S.C. § 6331 (1976).[10] These liens and levies are still outstanding. Attachment by the Government will continue until the Tax Court resolves the nature and extent of Park's tax liability. The apparent effect has been to shut down Pacific's operations and deny payment to all complaining creditors.
 
 
 10
 No issue arises as to Pacific's right to challenge seizure of its property. However, an initial question addressed by the District Court and raised on appeal concerns whether or not Pacific's creditors have standing to test the action taken by the IRS.
 
 
 11
 Standing to sue in federalcourt is conferred on complainants alleging concrete injury to an interest that is "arguably within the zone of interests" to be protected by the statute in question. Association of Data Processing Serv. Orgs. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). In this instance, all complainants sue as persons other than taxpayers, claiming protection under 26 U.S.C. § 7426(a). The provision permits actions challenging a levy by the United States only if the plaintiff "claims an interest in or lien on" the property at issue. Pacific's creditors allege such an interest, arguing that any claim for payment on an outstanding debt amounts to an "interest" protected under the statute. At the outset, we must decide which of the interests asserted below arguably falls within the terms of the statute.
 
 
 12
 Section 7426 of the Internal Revenue Code was enacted as part of the Federal Tax Lien Act of 1966.[11] Recognizing that the Government's rigorous tax enforcement activities at times encroached upon persons other than the delinquent taxpayer, Congress sought to provide a measure of protection for the property rights of these third parties. See S.Rep.No.1708, 89th Cong., 2d Sess. 29, reprinted in (1966) U.S.Code Cong. & Admin.News, pp. 3722, 3750. In so doing, Congress created a new exception to the broad statutory rule prohibiting suits in restraint of federal tax assessment efforts. 26 U.S.C. § 7421(a) (1976 & Supp. II 1978). This exception is precisely drawn and of limited scope. The statutory language, by effectively equating the terms "interest" and "lien" and relating both to "property," indicates that only persons claiming specific, possessory rights are entitled to seek judicial review. Subsequent discussion of relief affordable when property interests are found "superior to rights of the United States in such property" conveys a similar understanding that litigants must advance a particular, secured interest. 26 U.S.C. § 7426(b)(1) (1976). This traditional reading of the term "interest" is consistent with usage elsewhere in the Act.[12] It is further supported by a legislative understanding that the Act as a whole "substantially improves the status of private secured creditors."[13]
 
 
 13
 As already indicated, Pacific, the actual owner of the various properties levied or seized by the Government, unquestionably has standing under section 7426(a). It is equally apparent, however, that Pacific's three general creditors lack standing to sue. Their mere claim of a contractual right to be paid, unsecured by a lien or other specifically enforceable property interest, does not provide judicial access. To hold otherwise would invite litigation from numerous parties only remotely aggrieved by IRS levies, with consequent disruptive effects on federal tax enforcement. Congress intended a far narrower right to sue, and we see no reason to deviate from that clearly expressed design.
 
 
 14
 The situation as to Valley Finance, Inc. ("Valley") is somewhat different. Valley held a second deed of trust on the land and premises at 1604 K Street, N.W., Washington, D. C., making it a partly secured creditor of Pacific.[14] This deed of trust, entered into on February 15, 1977, and recorded one month later, is the type of property interest which does confer standing. Flores v. United States, 551 F.2d 1169, 1171 (9th Cir. 1977). The interest asserted in this instance, however, is clearly junior to that claimed by the Government. The Federal tax lien, which was filed on January 19, 1977, with the Recorder of Deeds in Washington, D. C., attached to all property owned by Pacific as of that date. Pacific's subsequent transfer by deed of trust was therefore a conveyance without legal effect. See generally United States v. Pioneer American Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). Valley's claim is not one on which relief can be granted, and it was properly dismissed.[15] Accordingly, we consider only the various challenges by Pacific to the legality of IRS conduct.
 
 NOTICE AND HEARING RIGHTS
 
 15
 In the first instance, Pacific claims to have been denied certain procedural rights due under the Internal Revenue Code. The failure to provide it with a notice of deficiency following the jeopardy assessment is said to invalidate the liens and levies imposed. Notice is a jurisdictional prerequisite under sections 6861(b) and 6212(a) of the Code. DaBoul v. Commissioner of Internal Revenue, 429 F.2d 38 (9th Cir. 1970). Pacific contends that having not received notice, it was effectively denied any opportunity to litigate before the Tax Court. Because such foreclosure is not expressly permitted by statute, Pacific urges that the IRS proceeded in an unlawful manner. See Laing v. United States, 423 U.S. 161, 176, 96 S.Ct. 473, 482, 46 L.Ed.2d 416 (1976).
 
 
 16
 The plain language of the statutory provisions at issue, however, compels a contrary result. Under section 6212, it is the taxpayer who is entitled to notice of deficiency, and thereby assured of access to the Tax Court in order to contest his tax liability. By requiring notification of the individual whose delinquency is at issue, Congress reasonably conferred the right to seek redress only on the party directly at risk. See Graham v. United States, 243 F.2d 919, 922 (9th Cir. 1957). In this instance, Park, the taxpayer, duly received notice and was able to seek redress in the Tax Court.
 
 
 17
 The claim that Pacific also is entitled to notice of Park's deficiency must be rejected. The IRS has asserted that Pacific, although a separate legal entity, is for these limited purposes simply an extension of the taxpayer, Park. If, as the Government contends, Pacific is identified as Park's alter ego, then Pacific possesses no separate statutory rights to additional notice. See generally G. M. Leasing Corp. v. United States, 429 U.S. 338, 350-51, 97 S.Ct. 619, 627, 50 L.Ed.2d 530 (1977). It is owed no separate notice of deficiency, because it has been adequately informed by virtue of the notice to the taxpayer. Under such circumstances, to require that the corporation be furnished with an identical "ticket to the Tax Court" would be superfluous and unduly wasteful of both administrative and judicial resources. Neither the statute nor its legislative history support such a conclusion.
 
 
 18
 Accepting Pacific's view that it is not Park's alter ego yields no different result. Should the two entities be treated as unrelated, Pacific, in effect, becomes a third party without the right to contest the merits of the taxpayer's assessment. See 26 U.S.C. § 7426(c) (1976). The corporation, of course, retains a right to contend that the IRS has wrongfully levied upon its property in order to satisfy the tax liability of another person. This complaint, however, properly arises not in the Tax Court but in the District Court, under section 7426(a). Indeed, Pacific relied on the latter remedial provision here. An action to contest alter ego status was prosecuted in District Court, and is appealed to this forum. Absence of parallel, duplicative litigation in the Tax Court is hardly evidence that Pacific was denied appropriate judicial access or statutory notice.
 
 
 19
 As the owner of property levied upon, Pacific was entitled to notice of the seizures themselves. 26 U.S.C. § 6335(a) (1976). Such notice, including a description of the property seized, protects inter alia the rights of innocent third parties. The requirement that such notice be "as soon as practicable after seizure" suggests a desire to assure more immediate access to judicial review than may be otherwise available under the provisions governing notice of deficiency. Cf. 26 U.S.C. §§ 6861(b), 6213(a) (1976). We can find no indication in the record that notice required under section 6335 was not received. Appellant, as plaintiff below, carried the burden of proving the Government's failure to follow prescribed statutory procedures. Because this issue was not raised before either the District Judge or this panel on appeal, we must assume that Pacific received the notice to which it was lawfully entitled.
 
 
 20
 In addition to questioning the Service's statutory compliance, Pacific asserts its constitutional right to a prompt hearing, which it allegedly did not receive. Relying on a line of cases that confers an opportunity to be heard prior to the taking of property, appellant argues that lack of promptness here interfered with its right to due process of law under the Fifth Amendment. See generally North Georgia Finishing, Inc. v. DiChem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).
 
 
 21
 The opportunity to be heard in accordance with principles of due process is not absolute. Its nature and timing require "appropriate accommodation of the competing interests." Goss v. Lopez, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975). The jeopardy collection power exercised by the IRS, while directed to exigent circumstances, is a critical aspect of the overall self-assessment tax system. G. M. Leasing Corp. v. United States, 429 U.S. 338, 350, 97 S.Ct. 619, 627, 50 L.Ed.2d 530 (1977). Government's substantial interest in swiftly securing its revenues has been found to justify seizure of assets without a prior hearing. E. g., Commissioner of Internal Revenue v. Shapiro, 424 U.S. 614, 630 n. 12, 96 S.Ct. 1062, 1072 n. 12, 47 L.Ed.2d 278 (1976); Fuentes v. Shevin, supra, 407 U.S. at 92, 92 S.Ct. at 2000.
 
 
 22
 It is conceded that under the law applicable at the time, taxpayers challenging jeopardy seizures were denied access to a judicial forum for up to 60 days, and no provision existed for preliminary inquiry or review at the administrative level. The Supreme Court has expressly reserved judgment as to whether a 60-day delay following jeopardy seizure of a taxpayer's assets amounts to denial of procedural due process.[16] In the present context, however, this matter is without consequence. Pacific has insisted throughout these proceedings that it is not the delinquent taxpayer. As a third party challenging the Government's finding of a nexus between itself and Park, its proper avenue of redress is in the District Court under section 7426.[17] See Al-Kim, Inc. v. United States, 610 F.2d 576, 579-80 (9th Cir. 1979); Flores v. United States, 551 F.2d 1169 (9th Cir. 1977). Nothing in that statutory provision prohibits or otherwise limits the right to bring an immediate action in order to contest the Government's levy.[18] The fact that Pacific did not choose to act immediately, or to seek preliminary or emergency relief, cannot be construed as a bar to prompt judicial access. Because the statutory scheme affords ample and prompt hearing rights to affected third-party property holders, no constitutional problem arises.[19]
 
 DISTRICT COURT FINDINGS
 
 23
 Finally, turning to the merits, Pacific contends the District Court's findings of fact constitute plain error. Claiming that the trial judge relied primarily on stale evidence and ignored more relevant recent developments, Pacific urges that the record properly understood utterly fails to justify a disregard for its separate corporate status.
 
 
 24
 The concept of distinct corporate entity has long served useful business purposes, encouraging risktaking by individual investors as well as overall convenience of financial administration. See generally Moline Properties, Inc. v. Commissioner of Internal Revenue, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943). Ordinarily, such considerations justify treating the corporation as a separate entity, independent of its owner. Quinn v. Butz, 510 F.2d 743, 757 (D.C.Cir.1975). On occasion, however, this concept is abused, and yields results contrary to the interests of equity or justice. Courts have not hesitated to ignore the fiction of separateness and approve a piercing of the corporate veil when the corporate device frustrates clear intendment of the law. Id. at 757-58 (citing cases). The Government's inability otherwise to satisfy legitimate tax debts clearly may form a sound basis for such disregard of corporate form. See, e. g., Avco Delta Corp. Canada Ltd. v. United States, 540 F.2d 258, 264 (7th Cir.), cert. denied, 429 U.S. 1040, 97 S.Ct. 739, 50 L.Ed.2d 752 (1976); G. M. Leasing Corp. v. United States, 514 F.2d 935 (10th Cir. 1975), rev'd in part on other grounds, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977).
 
 
 25
 Given the diversity of corporate structures and the range of factual settings in which unjust or inequitable results are alleged, it is not surprising that no uniform standard exists for determining whether a corporation is simply the alter ego of its owners. The fact of sole ownership is not by itself sufficient, although it is certainly not irrelevant. Evidence of plain fraud is similarly of probative value, though not a prerequisite. DeWitt Truck Brokers, Inc. v. W. Ray Fleming Fruit Co., 540 F.2d 681, 684 (4th Cir. 1976). We have previously suggested that the court may ignore existence of the corporate form whenever an individual so dominates his organization "as in reality to negate its separate personality." Quinn v. Butz, supra, 510 F.2d at 758. Obviously, control by the individual must be active and substantial, but it need not be exclusive in a hypertechnical or day-to-day sense. The test is a practical one, based largely on a reading of the particular factual circumstances. As a fact issue, its ultimate determination is dependent upon the sound discretion of the trial judge in his appraisal of the evidence. His resolution will be left undisturbed on appeal unless clearly erroneous.
 
 
 26
 In the course of these proceedings, the trial court heard from numerous employees and officers of Pacific, from Mr. Park, and from the IRS Special Agent in charge of the investigation. After reviewing the voluminous testimony and documentation adduced at deposition and trial, we are entirely persuaded that no error was made in the finding of alter ego status.
 
 
 27
 Park founded Pacific in 1968, and was its president and sole shareholder on a continuous basis thereafter. Despite protestations in the record, there is no evidence that a major corporate decision was ever made by anyone other than Park. The Board of Directors played no meaningful role. There is serious doubt as to whether a Board existed at all prior to December, 1974. After that date, directors met infrequently. When they did meet, Board members approved corporate decisions and policies without discussion or question. Many purported meetings consisted of brief telephone conversations. Individual officers performed ministerial functions at the behest of the president. They exercised no significant discretionary authority. The conclusion that board members neither controlled nor influenced corporate affairs is amply supported.
 
 
 28
 It is equally apparent that Park used corporate funds and staff for his own private purposes on a regular basis. He wrote checks on Pacific's bank accounts to cover unrelated personal and business expenses. Pacific employees served as Park's chauffeur, managed his domestic staff, entertained his guests, and ran other personal errands for him, often of an elaborate international nature. They spent substantial amounts of time, at his behest, on these various personal matters. Pacific provided similar administrative and managerial services to assist Park in other business ventures. The record sufficiently establishes that the corporation operated primarily, if not exclusively, to perform staff functions for its founder and sole shareholder.
 
 
 29
 This conclusion is further supported by substantial evidence that Park manipulated the few ventures in which Pacific was involved in order to advance his own distinct business or financial interests. To this end, he assigned profits from work performed by Pacific either to himself or to other companies. He forgave bad loans made to influential figures with Pacific funds. He also assigned funds to Pacific for ventures in which the corporation had played no part. By persistently exercising control over the assignment of profits and payments, Park effectively used Pacific as an incorporated pocketbook. In short, the record is replete with evidence that the corporation was fundamentally an extension of its taxpayer-owner. The trial court's findings on this score were clearly well-founded and not error.
 
 CONCLUSION
 
 30
 Pacific's general creditors were properly dismissed. Although the partly secured creditor, Valley Finance, Inc., had standing to sue, its lack of priority also warrants dismissal. For the reasons set forth above, Pacific's statutory and constitutional due process claims are without merit, as is the challenge to factfinding at trial. Accordingly, the judgment of the District Court in both cases is
 
 
 31
 Affirmed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 292(a)
 
 
 [1]
 Section 7426 of the Internal Revenue Code authorizes civil actions by persons other than taxpayers:
 (a) Actions permitted
 (1) Wrongful levy. If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. . . .
 
 
 [2]
 Under 28 U.S.C. § 2410, a party may bring suit against the United States "to quiet title to real or personal property on which the United States has or claims a mortgage or other lien."
 
 
 [3]
 Memorandum Opinion, January 3, 1979, at Pacific Joint Appendix ("PJA") 7
 
 
 [4]
 Pacific also asserted a Fourth Amendment claim in its papers, but abandoned that position prior to oral argument. Assuming it prevails on one or more of the three points raised, Pacific claims it is entitled to money damages and attorney fees under relevant statutory authority. In light of our disposition of the substantive claims, we need not reach this separate matter of statutory interpretation
 
 
 [5]
 Of the four plaintiffs in this action, three claimed to be owed monies for various services performed as salaried employees or consultants of Pacific. The fourth plaintiff was Valley Finance, Inc. ("Valley"), a corporation also wholly owned by Tongsun Park. Valley loaned money to Pacific, and held a second deed of trust on certain real property as collateral for the loan
 
 
 [6]
 Pacific did not answer the complaint or otherwise contest the existence of the debts alleged
 
 
 [7]
 See Memorandum and Orders, April 26, 1978, at Valley Joint Appendix ("VJA") 5-11
 
 
 [8]
 See Memorandum Opinion and Orders, January 3, 1979, and February 1, 1979, at PJA 1-11, 25-26
 
 
 [9]
 Section 6321 reads in its entirety as follows:
 If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.
 Notices of lien were filed January 19, 20, and 24, 1977. The record contains 17 separate notices, eight addressed to Tongsun Park and nine to Pacific. They were filed with local court clerks and recorders of deeds in California, Maryland, Virginia, the District of Columbia, and New York. See PJA 78-94.
 
 
 [10]
 Section 6331 provides in part as follows:
 (a) Authority of Secretary or delegate. If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax . . . by levy upon all property and rights to property . . . belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. . . . If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.
 (b) Seizure and sale of property. The term "levy" as used in this title includes the power of distraint and seizure by any means. . . .
 The actual levies occurred between March 8, 1977, and September 28, 1977. In each instance, a notice of levy or seizure was sent to the property-holder. See PJA 143-47.
 
 
 [11]
 Pub.L.No.89-719, § 110(a), 80 Stat. 1142
 
 
 [12]
 See, e. g., Pub.L.No.89-719, § 101(a), 80 Stat. 1125, codified at 26 U.S.C. § 6323 (1976); S.Rep.No.1708, supra, at 3, reprinted in (1966) U.S.Code Cong. & Admin.News, pp. 3722, 3724 (identifying interests having priority over tax liens)
 
 
 [13]
 S.Rep.No.1708, supra, at 2, reprinted in (1966) U.S.Code Cong. & Admin.News, pp. 3722, 3723; H.R.Rep.No.1884, 89th Cong., 2d Sess. 2 (1966)
 
 
 [14]
 The deed of trust was valued at $110,500, less than the $122,500 that Valley previously had advanced to Pacific
 
 
 [15]
 In view of the priority established by the Government's tax lien, the precise date of the levy challenged by Valley is of little importance. The absence of a levy would mean that suit could not be brought under section 7426(a) as to the particular property. We note, however, that on September 28, 1977, the IRS levied upon 100% of the Pacific stock owned by Tongsun Park. See Statement of Undisputed Facts, P 12, VJA at 18. With its action, the government effectively took possession of all corporate assets not previously seized. This final act of distraint constituted a levy against the real property in question, under the broad statutory construction given to that term. See 26 U.S.C. § 6331(b) (1976). Thus Valley's claim was properly raised, although no relief is available
 
 
 [16]
 Laing v. United States, 423 U.S. 161, 183-84 n. 26, 96 S.Ct. 473, 485 n. 26, 46 L.Ed.2d 416 (1976). See also Commissioner of Internal Revenue v. Shapiro, 424 U.S. 614, 630 n. 12, 96 S.Ct. 1062, 1072 n. 12, 47 L.Ed.2d 278 (1976). The Court in Shapiro, while encouraging administrative inquiry well before the 60-day period expires, did not impose such inquiry as a constitutional requirement. Congress, however, responded to the Court's suggestion, and enacted a scheme for expedited administrative and judicial review of jeopardy assessment procedures. Pub.L.No. 94-455, § 1204(a), 90 Stat. 1695, codified at 26 U.S.C. § 7429 (1976). See S.Rep.No. 938, Part I, 94th Cong., 2d Sess. 363-66, reprinted in (1976) U.S.Code Cong. & Admin.News, pp. 2897, 3439, 3792-95. Under this scheme, which became effective on February 28, 1977, the taxpayer must receive within five days a written statement explaining the basis for the government's determination that tax collection was in jeopardy. He then can initiate administrative and judicial review on an accelerated schedule, resulting in a judicial determination as to the reasonableness of the jeopardy assessment within as little as 40 days
 
 
 [17]
 Once again, if it is assumed that Pacific is the taxpayer's alter ego, then the corporation's position is identical to that of its owner. Park has brought an action challenging the assessment in Tax Court. Any related constitutional challenge should be raised in that pending action. Knowles v. Hirsch, 65 F.Supp. 690 (D.D.C.1946) (three-judge court)
 Because the new section 7429 procedures, described in note 16 supra, place an initial burden on the government, and the initial required statement of reasons implicates the government's contention that a taxpayer and his alter ego are one and the same, it would appear that Pacific shares with Park the right to seek expedited review. Thus as a policy matter, third parties charged with alter ego status are now assured an early ruling on the question of whether collection of a delinquent tax from the alter ego's assets is in jeopardy.
 
 
 [18]
 Under section 7426(b)(1), a third party upon sufficient showing of irreparable injury may enjoin the enforcement of such a levy
 
 
 [19]
 At the post-levy proceeding, the Service must justify its extraordinary action in connecting a third party's property to the particular delinquent taxpayer. The government's burden of establishing a basis for its summary seizure will vary, depending on the type of relief sought and the timing of the judicial inquiry. See generally Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962); Flores v. United States, supra, 551 F.2d at 1175 nn. 5-6. In this instance, the parties do not raise the issue of what precise standard was or ought to have been applied at trial. The District Judge did not address the matter in his opinion below. It is, however, important to distinguish Pacific's situation from one in which the third party seeks prior injunctive relief or an immediate hearing following seizure
 The moving party, of course, retains the ultimate burden of proof in its attempt to persuade a District Court that government action should be overturned. A government showing of probable cause, familiar in other Fourth Amendment settings, can rebuff immediate challenges to the propriety of a levy. However, stronger support from the IRS is needed where, as here, the basis for government action is explored in depth during discovery, and the trial court is rendering its final judgment. Considerations of fairness impel us to conclude that once the factual record has been fully developed over time, and the seizure of property threatens to become permanent, the government must establish its asserted nexus between taxpayer and a third party by substantial evidence.
 We are applying this stronger standard for purposes of review. Accordingly, the trial judge's conclusion that the government had reasonable grounds for disregarding Pacific's corporate existence must be supported by substantial evidence in the record if we are to affirm.