869 F.2d 985
 63 A.F.T.R.2d 89-954, 89-1 USTC P 9295,
52 Ed. Law Rep. 897
 COMMONWEALTH OF KENTUCKY, for the Benefit of UNITED PACIFIC
INSURANCE COMPANY; and United Pacific Insurance
Company, Plaintiffs-Appellants,
v.
LAUREL COUNTY, Laurel County Fiscal Court and Laurel County
Board of Education, Defendants-Appellees.
 No. 87-6350.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 17, 1988.
Decided March 15, 1989.
 
 Bernard L. Balkin, Keith Witten (argued), Sandler, Balkin, Hellman & Weinstein, P.C., Kansas, City, Mo., Thomas E. Meng, Stites & Harbison, Lexington, Ky., for plaintiffs-appellants.
 Thomas H. Glover (lead) (argued), Hay, Moss & Lynn, Lexington, Ky., Elmer Cunnagin, Larry G. Bryson, Bledsoe & Bryson, London, Ky., for defendants-appellees.
 Gary R. Allen, William S. Estabrook, John Dudeck, Jr. (argued), Tax Div., Dept. of Justice, Washington, D.C., amicus curiae, for U.S.
 Before WELLFORD, Circuit Judge, and PECK, and LIVELY,* Senior Circuit Judges.
 WELLFORD, Circuit Judge.
 
 
 1
 We unfortunately have before this court a repeat performance of an old controversy relating to the effect of a tax levy in the absence of the document itself and the question of burden of proof of a party or parties who claim priority over the government under the singular facts of this case. We have set out the underlying circumstances in a prior opinion reported at 805 F.2d 628 (1986), and will therefore only summarize the salient facts here. United Pacific Insurance Company (United Pacific), surety for Y & S Construction Company (Y & S), contractor for the Laurel County High School building by an undertaking with Laurel County authorities, petitioned the United States Supreme Court for a writ of certiorari seeking to overturn our previous decision in this dispute to the effect that "payment made by a custodian of property in which the taxpayer has an interest pursuant to an IRS administrative levy is a valid defense to a subsequent action by a third party claiming an interest in the property." Id. at 635. We also decided that "a wrongful levy suit must be filed, at the latest, within twenty-one months of the levy," and that the Laurel County agencies' third-party complaint was time barred under the circumstances. Id. at 637.
 
 
 2
 The Supreme Court declined to review the case, and it was therefore remanded to the district court for a determination and specific findings as to whether there had been a tax levy made in this case against Y & S for a large amount of unpaid withholding and social security taxes, and if so, the date of service of the "critical levy." Id. at 634.
 
 
 3
 The district court found after a hearing on remand that "no issue of material fact exists in the present case, and Defendants [Laurel County agencies] are entitled to Judgment as a matter of law." Joint Appendix at 22. The grant of summary judgment followed findings that the IRS levy in question had existed but was, after the passage of years, a "missing document." There is evidence of a letter from the County Treasurer, George W. Cloyd, to United Pacific dated May 18, 1970, which made reference to the "I.R.S. levy" and stated that the "amount paid" to the government on this levy was $100,833.91, which sum was deducted from the "amount due [to] Y & S on payment # 13" of the construction contract. United Pacific had assumed the responsibilities for the construction as surety for Y & S, which had defaulted on the contract. Also in evidence is a check to United Pacific, mailed with Cloyd's letter, in the amount of $15,832.68, the balance due from the Laurel County School Building Construction Fund after deduction of the above stated payment to the IRS.
 
 
 4
 Another piece of evidence is a check to the IRS for $100,833.91, dated May 18, 1970, signed by Mr. Cloyd, and drawn on the Building Construction Fund. The check appears to indicate that it is in response to a "levy," but the presence of a London, Kentucky bank stamp across the front makes the notation difficult to read.
 
 
 5
 United Pacific responded to Mr. Cloyd's letter on June 1, 1970, acknowledging receipt of the $15,832.68 check (and another for payment 14), but stating, "we do not approve of the $100,833.91 deduction that has been made ... in paying ... the Internal Revenue Service." United Pacific considered this disbursement by Laurel County of contract funds to the IRS to be wrongful, and demanded payment of "all funds that have become payable under the contract."
 
 
 6
 Copies of notices of IRS federal tax liens filed against Y & S for its failure to pay 1969 employment taxes are also in the record. These liens, which were recorded in the Laurel County Clerk's Office in February of 1970, total more than the amount purportedly paid by Mr. Cloyd in response to the levy. The United States was permitted to file an amicus curiae brief and to participate in oral argument in the appeal filed by United Pacific from the adverse judgment rendered against it.
 
 
 7
 Although quite old at the time of his testimony in 1987, Mr. Cloyd had considerable recollection about the circumstances of the IRS levy and the reason the document is missing.
 
 
 8
 Q. Do you recall how the IRS first became involved in this project? When did they first contact you?
 
 
 9
 A. They first contacted me in May of 1970, I think it was.
 
 
 10
 Q. Who was it that contacted you?
 
 
 11
 A. That agent from Pineville.
 
 
 12
 Q. Do you recall his name?
 
 
 13
 A. No, I can't think of what his name was. You forget things, when you get old. You don't recall them too quick.
 
 
 14
 Q. What was the first contact that you had with the revenue agent? Do you recall the circumstances?
 
 
 15
 A. The Bank called me at the house, and told me that the agent was over there and wanted to see me.
 
 
 16
 MR. MENG: Who called you?
 
 
 17
 A. Someone from the Bank. It may have been Little, himself.
 
 
 18
 MR. MENG: What Bank?
 
 
 19
 A. Cumberland Valley.
 
 
 20
 Q. At the time, you were the County Treasurer?
 
 
 21
 A. Yes.
 
 
 22
 Q. When they called you, what did they tell you?
 
 
 23
 A. They told me the agent was there from the IRS and wanted to see me.
 
 
 24
 Q. Did you go to the Bank?
 
 
 25
 A. Yes.
 
 
 26
 Q. Did you see the agent?
 
 
 27
 A. Yeah. He gave me the levy, and I tried every way in the world to talk him out of it, but, of course, there wasn't any way to do it.
 
 
 28
 * * *
 
 
 29
 * * *
 
 
 30
 Q. Mr. Cloyd, do you recall what happened to the actual levy, the document itself?
 
 
 31
 A. No. I left it there, where we certified the check, with the Bank, and that's the last I've ever seen of it.
 
 
 32
 Q. Did you, or did the Bank, keep that levy?
 
 
 33
 A. The Bank kept it, but they lost it in that big turn over.
 
 
 34
 Q. Do you know when that document was lost?
 
 
 35
 A. No, I wish I did.
 
 
 36
 Q. How do you suppose it got lost?
 
 
 37
 A. Just in the natural movement of surplus material. The check had been issued and paid and the certified check cancelled in the payment of that check and everything, and somebody just assumed it didn't amount to anything, I guess, and threw it in with some papers.
 
 
 38
 Q. Didn't you say that the Bank changed or moved to a different building, about that time?
 
 
 39
 A. Yes. They built this building they're in now. They had been building on it for a year or more, I guess, at the time. They were a couple of years building it. See, they occupied a pretty good size space, before they started building it.
 
 
 40
 Q. Have you made a search for the levy?
 
 
 41
 A. The custodian and I spent hours and hours on it, different days, searching for it. We went through storage rooms and everything, and the only thing he could give me was it probably got in with the shredder.[1]
 
 
 42
 Joint Appendix at 112-13, 118-19.
 
 
 43
 We are satisfied that the evidence submitted, documentary and otherwise, was sufficient to support the finding of the district court on remand. There was no other source of evidence indicated that would bear upon the existence, date, or service of the critical levy. Summary judgment was appropriate despite the fact that the district court had to make a judgment concerning the quality of Mr. Cloyd's testimony in light of corroborating circumstances adduced. We find no error, then, in the district court's conclusion that Laurel County had established the "existence, service and validity of the alleged levy," to borrow the words of United Pacific, Brief of Appellant at 1, and it was therefore appropriate to grant defendants summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
 
 
 44
 Despite its complaint to Laurel County authorities about paying the IRS levy out of contract funds which were to be disbursed for work performed on the high school, United Pacific, the party directly and adversely affected, made no effort to proceed under 26 U.S.C. Sec. 7426. This section, styled "civil actions by persons other than taxpayers," provides that "any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States." 26 U.S.C. Sec. 7426(a)(1).
 
 
 45
 The procedures involved in this type of case, as pointed out in our previous decision, were discussed by the Supreme Court in United States v. National Bank of Commerce, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985):
 
 
 46
 Congress thus balanced the interest of the Government in the speedy collection of taxes against the interests of any claimants to the property, and reconciled those interests by permitting the IRS to levy on the assets at once, leaving ownership disputes to be resolved in a postseizure administrative or judicial proceeding. See United Sand & Gravel Contractors, Inc. v. United States, 624 F.2d 733, 739 (CA5 1980); Valley Finance, Inc. v. United States, 203 U.S.App.D.C. 128, 136-137, 629 F.2d 162, 170-171 (1980), cert. denied sub nom. Pacific Development, Inc. v. United States, 451 U.S. 1018 [101 S.Ct. 3007, 69 L.Ed.2d 389] (1981).
 
 
 47
 472 U.S. at 729, 105 S.Ct. at 2929.
 
 
 48
 United Pacific received prompt notice of the existence and amount of the IRS levy, as well as the action taken by Laurel County authorities in response to the levy. Instead of bringing its action under 26 U.S.C. Sec. 7426, United Pacific chose to sue Laurel County and its responsible agencies and officials. We held that the latter parties, as custodians of property in which Y & S had an interest, have a "valid defense" and that they are held harmless "to claims of third parties" such as United Pacific. 805 F.2d at 635 (citing National Bank of Commerce and other legal authority, including 26 U.S.C. Sec. 6332(d)).
 
 
 49
 Appellant addressed much of its argument on appeal to whether the underlying federal tax lien attaches to progress payments when the contractor has defaulted and the performance and payment surety which completes the job is subrogated under state law to the rights of the owners, laborers, and materialmen, and to whether Laurel County, as owner, was liable to United Pacific for paying the contested amount of the IRS levy (found valid by the district court on remand). We have already decided the second of these issues and need discuss it no further. See Petition of United States Steel Corp., 479 F.2d 489, 494 (6th Cir.), cert. denied, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973).
 
 
 50
 We previously held that because Kentucky law creates no trust fund in the amount of the contract price due for the benefit of materialmen, and because Y & S did have property rights in the progress payments, the IRS lien and subsequent levy attached to these progress payment funds. Appellant's current contentions are matters reviewed previously by the Supreme Court, which denied a writ of certiorari with respect to our prior opinion.
 
 
 51
 This court did not discuss the significance of United Pacific's subrogation rights in its opinion, but United Pacific, at the time of the original action, made no effort to persuade this court to reconsider or rehear that issue. It also failed to contest the validity of the lien or subsequent levy on the progress payments under 26 U.S.C. Sec. 7426. We have not discussed the extent of United Pacific's subrogation rights, and we do not deal with them in this decision. We therefore render no judgment with respect to the applicability of Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), or National Surety Corp. v. State National Bank of Frankfort, 454 S.W.2d 354 (Ky.1970), to the facts of this case.
 
 
 52
 For the reasons stated we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Pierce Lively, became a Senior Circuit Judge January 1, 1989
 
 
 [1]
 United Pacific asserts that Mr. Cloyd "admitted lack of memory; not just in general, but also with respect to the particular facts of the alleged levy or levies." Brief of Appellant at 37. This is not surprising in view of the lapse of time between the effectuation of the levy and Mr. Cloyd's testimony