Michael V. FRIERDICH,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 92–1623.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 17, 1992.

Decided Feb. 11, 1993.

Ronald D. Stanley, Columbia, IL (argued), for plaintiff-appellant.

Robert L. Simpkins, Asst. U.S. Atty., Office of U.S. Atty., Criminal Div., Fairview Heights, IL, Gary R. Allen, Jordan L. Glickstein (argued), William S. Estabrook, Mark Winer, Gerald H. Parshall, Jr., Dept. of Justice, Tax Div., Appellate Section, Washington, DC, for defendant-appellee.

Before POSNER, FLAUM, and ROVNER, Circuit Judges.

POSNER, Circuit Judge.

Michael Frierdich brought this suit against the United States contending that it had made a wrongful levy on property that Frierdich had "an interest in or lien on," 26 U.S.C. § 7426(a)(1), and seeking a judgment for some $37,000, which he claimed to be the value of his interest. 26 U.S.C. § 7426(b)(2)(B). After a bench trial, the district judge dismissed the suit on the ground that the interest claimed by Frierdich in the property in question was not the kind that supports standing to bring a third-party suit for wrongful levy—third party because Frierdich is not the taxpayer from whom the Internal Revenue Service was seeking to collect taxes by making the levy in question.

To explain the character of Frierdich's interest, we must work through a series of transactions. In October 1985 the corporation of which Frierdich was the president and controlling stockholder, Universal Beverage Sales, a distributor of beverages, made a contract to sell its principal assets to Twin Rivers Distributing Company in exchange for cash installment payments and other consideration. After the sale Universal's principal asset was the right to receive the agreed-upon payments from Twin Rivers. The payment stream not being large enough, however, to meet all of Universal's financial obligations, in February of the following year Frierdich and his wife borrowed $400,000 from the Lemay Bank and Trust Company to pay Universal's debts. As collateral for the loan Frierdich caused Universal to assign its right to receive payments from Twin Rivers to the bank. Later he caused Universal to make a subordinated assignment of the same right to him so that, should the bank be repaid in full, subsequent payments by Twin Rivers would go directly to him.

A post-nuptial property agreement between Frierdich and his wife, confirmed in their divorce decree in January 1988, assigned to her all of his rights in Universal, as well as his subordinated right to future payments from Twin Rivers. He also had Universal assign to her any right it might have to future payments from Twin Rivers notwithstanding its assignment of the right to the bank. And he agreed to indemnify her for any debts of Universal for which she might become liable.

Universal owed unpaid federal employment taxes to the Internal Revenue Service, which in 1989 seized assets of Twin Rivers equal to the amount which that company still owed Mrs. Frierdich (by assignment from Universal and her husband) on the contract with Universal. That seizure is the levy which precipitated this suit, to which Mrs. Frierdich is not a party. After the levy, the bank released the assignment to it of Universal's right to the payments under the Twin Rivers contract, but Frierdich and his wife remained liable on their promissory note to the bank for the $400,000 loan that they had obtained from the bank to pay Universal's debts. Mr. Frierdich argues that his having taken out a personal loan from the bank to pay debts of Universal gives him an "equitable" interest, not further specified, in the money that Twin Rivers owed Universal and that it now owes his former wife by virtue of the assignment from Universal to him, his assignment of all his interest in Universal to her, and the release by the bank of the assignment that Universal had made to it.

In a practical sense Frierdich has an "interest" in his former wife's contractual entitlement to payments from Twin Rivers for the rights that it acquired from Universal. The $400,000 was borrowed from the bank to pay off debts of Universal, and Frierdich has agreed to indemnify his wife for any expense she incurs in respect of those debts. Should the bank try to collect the loan from her, she will doubtless attempt to shift the liability to her ex-husband on the ground that their debt to the bank is really a debt of Universal, since the loan was taken out to help it repay its debts, and therefore she is entitled to indemnity from him. The attempt may fail; for that matter the bank may not seek to collect the loan from her; still another possibility is that by virtue of the assignment to her of Twin Rivers' contract with Universal she can pocket any payments from Twin Rivers and still go after her husband should the bank try to collect the loan from her. But all this is just to say that Mr. Frierdich's interest in the payment stream on which the Internal Revenue Service levied is probabilistic; we do not understand the government to be contending that it does not have a positive present value. Being in effect a guarantor of Universal's debts, Frierdich is harmed by the diminution in Universal's wealth arising from the seizure by the Internal Revenue Service of income due Universal from Twin Rivers.

But is Frierdich's interest in that income an "interest" within the meaning of the statute? On this, the central question in the case, the government to our dismay has been unhelpful. It insists, on the authority of *Valley Finance, Inc. v. United States*, 629 F.2d 162, 168 (D.C.Cir.1980), that the word "interest" in the statute authorizing third-party challenges to wrongful levies is confined to "specific, possessory rights." *Valley Finance* said this, all right, but it also said that any secured creditor has the requisite interest, *id.*, even though secured creditors do not have possessory rights, at least in the literal sense—although the court probably was referring to the fact that in the event of a default a secured creditor can in effect "seize" the security and have it sold to satisfy his claim. *Val-*

*ley Finance* based its interpretation of the statute as equating "interest" to "secured" or "possessory" interest on the statutory language and on some smatterings of legislative history that we find unilluminating. The other cases that touch on the question add nothing to *Valley Finance's* brief discussion though they agree with its conclusion. *United States v. Eschweiler*, 782 F.2d 1385, 1393 (7th Cir.1986); *National Bank & Trust Co. v. United States*, 589 F.2d 1298, 1301 (7th Cir.1978); *Century Hotels v. United States*, 952 F.2d 107, 109 (5th Cir.1992); *Security Counselors, Inc. v. United States*, 860 F.2d 867, 869 (8th Cir.1988); *Brooks v. United States*, 833 F.2d 1136, 1147 (4th Cir.1987); *Morris v. United States*, 813 F.2d 343, 344 (11th Cir. 1987); *Arth v. United States*, 735 F.2d 1190, 1193 (9th Cir.1984); see also *Flores v. United States*, 551 F.2d 1169, 1174 (9th Cir.1977). So did the government in its brief in our case, but at the oral argument it retreated and appeared to concede that if Frierdich had retained a contractual right to payment from Twin Rivers he would have had standing to challenge the levy on that company's assets. A contractual right, as such, is not a possessory right, specific or otherwise; it is not a secured interest; it is that "mere claim of a contractual right to be paid, unsecured by a lien or other specifically enforceable property interest," which *Valley Finance* said did not confer standing to challenge a wrongful levy. 629 F.2d at 168.

The word "interest" in the statute gains coloration from its neighbor, "lien." When interest and lien are conjoined, the inference arises that the legislature was referring to ownership or its near equivalents, such as leasehold and lien. The granting to the holders of such interests of the right to challenge wrongful levies is necessary to provide an effective remedy against such levies. Suppose the IRS takes from T, the delinquent taxpayer, by way of levy property belonging to O, or property nominally belonging to T but so far in hock to C that T is unwilling to incur the expense of trying to keep it out of the Service's hands, or property owned by T but leased to L so

that the latter faces dispossession if the levy is permitted (and T may have decamped). In these examples, the only person with sufficient interest in the property to challenge the levy may be O, C, or L, that is, the third party, rather than T, the taxpayer. So the law grants the third party standing to challenge the levy. It is otherwise if the third party is a mere unsecured creditor. Ordinarily when a creditor wants to challenge a levy on (or any other taking of) property owned by his debtor, in order to enhance the probability of being able to collect the debt, the owner has an even stronger incentive to contest the levy or other taking. Allowing the creditor to contest it as well would thus open the door to multiple suits arising from the same levy. This is all the plainer when the "creditor" is merely a guarantor, who has as we have said a practical stake in what happens to the property of the person whose debts he has guaranteed but not the kind of stake that has ever been thought to entitle him to act as if he owned the property. *Mid–State Fertilizer Co. v. Exchange National Bank,* 877 F.2d 1333, 1336 (7th Cir.1989).

■ The relation to ordinary notions of standing, whether constitutional notions founded on interpretation of Article III of the Constitution or common law notions found in tort law or statutory interpretations, as in antitrust law or under RICO, *Holmes v. Securities Investor Protection Corp.,* —— U.S. ——, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Air Courier Conference v. American Postal Workers Union,* 498 U.S. 517, —— ——, 111 S.Ct. 913, 917–18, 112 L.Ed.2d 1125 (1991); *North Shore Gas Co. v. EPA,* 930 F.2d 1239, 1242 (7th Cir.1991); *In re Industrial Gas Litigation,* 681 F.2d 514 (7th Cir.1982), should thus be apparent. The common theme is the desirability of confining the right to sue to the person who has the greatest interest in the outcome of the suit, rather than allowing someone with a tenuous interest to gum up the works by suing also or instead. *Kansas v. Utilicorp United Inc.,* 497 U.S. 199, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990); *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977); *North Shore Gas Co. v. EPA, supra,* 930 F.2d at 1242–43; *Mid–State Fertilizer Co. v. Exchange National Bank, supra,* 877 F.2d at 1335–36; *People Organized for Welfare & Employment Rights (P.O.W.E.R.) v. Thompson,* 727 F.2d 167, 172–73 (7th Cir.1984). (*Mid–State Fertilizer* is the case closest to this one, because it involved the question of a guarantor's standing.) The assets on which the IRS levied consist of cash owned by Twin Rivers, which therefore had the greatest interest in contesting the levy, though for unexplained reasons it chose not to do so. It is true that Twin Rivers presumably was indifferent between paying the money it owed on the contract with Universal to Mrs. Frierdich, the assignee of that contract, or to the Internal Revenue Service. But that was not its choice. After the Service seized the money, Twin Rivers would owe the same amount to Mrs. Frierdich as it had owed her before the seizure; and there is no contention that Twin Rivers isn't good for the money.

■ Mr. Frierdich's interest is even more remote. He was not a creditor; Twin Rivers owed him nothing. He was a contingent creditor, who would become an actual one only if (for example) his former wife reassigned her rights in the contract between Twin Rivers and Universal to him in exchange for his indemnifying her for the debt she owed the Lemay Bank on account of Universal's debts. And even if Mr. Frierdich's interest were sufficient to confer standing, that interest was no more impaired by the seizure than his ex-wife's was. Which is another reason for confining standing to persons who have a claim of some sort to specific property. The unsecured creditor of a solvent debtor loses nothing, or very little, when a small part of the debtor's property is seized; he had not looked to that property to assure the repayment of his loan. It is otherwise when the creditor was counting on that piece of property to assure repayment and had obtained a security interest accordingly. The extinction of that interest by a wrongful levy hurts. The unsecured creditor lacks a comparable interest. We therefore hold in

agreement with what we take to be the ultimate holding of *Valley Finance* that the right of a third party to challenge a wrongful levy is confined to persons who have a fee simple or equivalent interest, a possessory interest, or a security interest in the property levied upon; it does not extend to unsecured creditors. The line between these two groups of interest holders, one entitled to challenge a wrongful levy, the other not, may in some cases be fuzzy, but clarification can be left to future cases. It is clear on which side of the line Mr. Frierdich's claim falls.

AFFIRMED.