**XEMAS, INC. Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 6–86–1077.**

United States District Court,
D. Minnesota,
Sixth Division.

March 24, 1988.

John Mack, New London, Minn., for plaintiff.

Thomas D. Sykes, U.S. Dept. of Justice, Washington D.C., for defendant.

## MEMORANDUM FINDINGS AND ORDER

DEVITT, District Judge.

In this action brought under 26 U.S.C. § 7426, plaintiff claims the United States wrongfully levied and foreclosed on certain Stearns County Minnesota property, title to which was then recorded in its name, and seeks return of the property. Defendant denies the claim and asserts it properly foreclosed its federal tax lien on the property pursuant to 26 U.S.C. § 6331 et seq. in satisfaction of delinquent federal taxes due from Roman and Imelda Spaeth who were the actual owners of the property within the meaning of § 6331(a).

The issue is whether the attempted serial transfer of title to the property from the Spaeths to "Joan Noske, as trustee of Chapter 7024 of Basic Bible Church of America", and later to "BBCA, Inc." and later to "Xemas, Inc.", the plaintiff, was a sham, lacking economic reality, and an attempt to defraud the United States as a creditor.

Trial was held March 14, 15, 16 and 18, 1988. Sixteen witnesses testified. All exhibits listed on the parties exhibit lists were

received. Briefs and proposed Findings of Fact and Conclusions of Law have been lodged.

The Court is fully satisfied that the Government's seizure of the property was not wrongful and that the series of attempted transfers of title was a sham, devoid of economic substance and a contrived device to defraud the United States of its claim upon the property of the taxpayers. This conclusion is supported by detailed findings later to be stated.

The facts which unfold from the witnesses, 150 exhibits and the files of the U.S. District Court for the District of Minnesota of which we take judicial notice, are of an attempt by a group of tax protester residents of Stearns County Minnesota to frustrate the Government in its attempt to satisfy its lien on a delinquent taxpayer's real property in Richmond, Minnesota. This was sought to be achieved by the taxpayers, Roman and Imelda Spaeth, aided and directed by fellow protestors Joan and James Noske and others, by creating dummy entities basically operated by underlings whom they controlled and by passing title to the Spaeth property on to those entities. Xemas, Inc., plaintiff herein, acquired title to the property on November 28, 1984.

The evidence shows that the principal participants in executing the scheme were Imelda Spaeth and Joan and James Noske. Imelda Spaeth is a housewife. (Roman Spaeth, husband of Imelda, was just painted on the scene. He testified he didn't really understand what was going on. In essence, he said he did what his wife told him to do.) Joan and James Noske, sister and brother, are college educated and have long engaged in real estate and tax work. The evidence showed that neither one has filed an income tax return since 1977. Joan Noske received a B.S. degree in business administration from St. Cloud State University in 1976 and has long practiced her accounting profession. She said she passed her CPA examinations and very shortly will receive her license in the mail.

Her brother, James Noske, has been a licensed real estate broker since 1972 and holds an MBA degree from St. Cloud State University. He said he is a third year law student at William Mitchell College of Law, St. Paul. He held the title of "Reverend" in Basic Bible Church of America, Chapter 7024. James Noske drafted the purported conveyance from the Spaeths to that entity in 1978.

The Noskes, Joan and James, both testified. They denied participation in any wrongdoing of any kind. Each was generally evasive in giving answers to key questions as to their apparent participation in the scheme. A strong showing of their involvement, however, came from other, highly credibly evidence.

A precis of the testimony of two witnesses, Daniel Strohmeier and Mary Heid, is significant in punctuating the deception orchestrated by Imelda Spaeth and the Noskes.

Strohmeier was a handyman for the Noskes for about 12 years. He did painting and ran errands. He had a limited education. He said he had a drinking problem for years and was in treatment centers for chemical dependency about 10 times. He said he had 2 oz. of blackberry brandy before 7:00 a.m. the morning he testified. He was competent.

Strohmeier testified the Noskes put him on as President of Xemas, Inc., when it was formed in October, 1984 and that he held that title till August, 1987, when he got fed up and quit. The Noskes also put his girlfriend, Mary Heid, on as Vice–President of Xemas, Inc. Strohmeier testified he did not actually run the affairs of Xemas, Inc. but only signed documents ("hundreds of them") when told to do so by the Noskes. He said he never attended any Xemas meetings and paid nothing for stock in the company. He said it was "all Greek to him" and that he "didn't know what was going on".

Similar testimony was offered by Mary Heid, live-in girlfriend of Strohmeier. The Noskes put her on as Vice–President and Financial Officer of Xemas, Inc. She paid nothing for stock and really didn't know what Xemas "was all about." She signed her name hundreds of times whenever Dan-

ny Strohmeier or the Noskes told her to do so.

The testimony of Strohmeier and Heid was very credible. It was convincing that Xemas, Inc. was just a dummy corporation controlled and directed by the Noskes and Imelda Spaeth for an improper tax avoidance purpose.

In response to the direction of Civil Rule 52, the court makes these additional, and more specific, findings:

1. The property at issue is a parcel of real estate, on which sits a single-family, three-bedroom, ranch-style home located in Richmond, Minnesota, legally described as:

> The South Seventy-two (72) feet of Lots Four (4), Five (5), and Six (6), Block Three (3) of Ahmann's Addition to the Village of Richmond, according to the plat and survey thereof on file and of record in the office of the County Recorder in and for Stearns County, Minnesota.

The property was seized by the Internal Revenue Service on July 9, 1986, pursuant to a Notice of Seizure (Form 2433) served on that date.

2. Plaintiff Xemas, Inc. is a Minnesota corporation formed October 24, 1984. At the time of the Service's seizure of the property, Xemas held record title to the property under a purported warranty deed dated November 28, 1984.

3. Roman and Imelda Spaeth are husband and wife, residing in Richmond, Minnesota. They held title to the property involved from the 1962 until December 28, 1978, when they executed a warranty deed conveying the property to Joan Noske as Trustee of Chapter 7024 of the Basic Bible Church of America, an unincorporated association. The deed was recorded with the Stearns County Recorder's Office on January 26, 1979.

4. James and Joan Noske are brother and sister. They have resided at all pertinent times in Richmond, Minnesota, with their mother, Esther Noske.

5. Joan Noske as Trustee of Chapter 7024 of the Basic Bible Church of America (hereinafter "Chapter 7024") conveyed the property to BBCA, Inc. by a quitclaim deed dated December 30, 1980. It was recorded January 27, 1981. BBCA, Inc. is a Minnesota corporation organized on or about November 20, 1980.

6. BBCA, Inc. conveyed title to the property to Xemas, Inc. by a warranty deed dated November 28, 1984.

7. On July 14, 1980, the U.S. Government, through the Internal Revenue Service, assessed $3,380.39 in federal income taxes against Roman and Imelda Spaeth for 1977; a notice of lien reflecting this assessment was filed with the Stearns County Recorder on August 31, 1981, reflecting that they owed that amount, plus interest. On September 18, 1984, the Internal Revenue Service caused to be filed with the Stearns County Recorder another notice of lien asserting that all property and rights to property belonging to BBCA, Inc. as the nominee of Roman and Imelda Spaeth were subject to that tax lien.

8. On February 27, 1985, the Service made assessments totaling $16,560.60 against Roman Spaeth for federal income taxes for the years 1978–82. A notice of lien reflecting those assessments was filed with the Stearns County Recorder on May 8, 1985. On July 25, 1985, another notice of lien was filed with the Recorder, asserting that all property and rights to property belonging to BBCA, Inc. as the nominee of Roman Spaeth were subject to that tax lien.

9. On February 11, 1986, the Service made assessments against Imelda Spaeth for federal income taxes for the years 1978–81; the assessments totalled $29,788.69. A notice of lien reflecting the assessments was filed with the Recorder on July 9, 1986. Another notice of lien was filed with the Recorder on that same date, asserting that property and rights to property belonging to BBCA, Inc. as the nominee of Imelda Spaeth were subject to that tax lien.

10. As early as December, 1977, the Spaeths began engaging in activities intended to prevent the collection of federal income taxes that were and would be properly due from them. These activities in-

cluded special arrangements by Mrs. Spaeth with the veterinary clinic where she worked as a bookkeeper. At first these arrangements provided that her paychecks during the years 1978 through 1980 were to be paid to Chapter 7991 of the Basic Bible Church of America. Later arrangements provided that her paychecks for 1981 through the present were to be paid to BBCA, Inc. These arrangements also permitted Mrs. Spaeth to avoid having taxes withheld from paychecks.

11. Mission, Inc. is a South Dakota corporation formed in August, 1981. Its primary activity was to provide a cover for a bank account that Joan and James Noske used to facilitate transactions related to their business ventures which included promoting illegal, abusive tax shelters through the operation of two corporations they controlled, Armageddon, Inc. and Parnell, Inc.

12. Since the early 1960's, the Spaeths have continuously resided at the property in question. Even after conveying the property to Ms. Noske as Trustee of Chapter 7024, they have continued to have complete beneficial use and enjoyment of that property and without the payment of rent.

13. The affairs of Chapter 7024, BBCA, Inc., Xemas, Inc., and Mission, Inc. were controlled and directed by James and Joan Noske to aid and assist the Spaeths in their effort to prevent the United States from collecting income taxes that were, and would become, due. There was an understanding between James and Joan Noske and the Spaeths that the Spaeths would continue to have beneficial use and enjoyment of this property notwithstanding the three conveyances at issue. These conveyances appeared to be a part of a larger scheme orchestrated by Joan and James Noske for the purpose of hindering and delaying efforts by the United States to collect taxes owed to it by various people.

14. The testimony of James Noske, Joan Noske, and Imelda Spaeth was not worthy of belief in any important respect. The testimony of James and Joan Noske reflected a purpose to conceal the truth. Each was often unresponsive and evasive.

Their testimony and demeanor did not reflect verity.

15. The purported conveyance from the Spaeth's to Joan Noske, trustee, reflected in the deed dated December 28, 1978, was made with an intent on the part of the Spaeths and Joan and Jim Noske to prevent the United States from collecting taxes the Spaeths did and would owe. The conveyance had no economic reality. It was made without fair consideration or reasonably equivalent value, and it left the Spaeths without assets having a value sufficient to pay the debts they owed to the United States. Moreover, it left them without sufficient assets to pay the additional debts they could reasonably be expected to owe to the United States in the future.

16. The purported conveyance from Joan Noske, trustee to BBCA, Inc., reflected in the deed dated December 30, 1980, was made with an intent on the part of the Spaeths and Joan and Jim Noske to prevent the United States from collecting the taxes the Spaeths did and would owe. The conveyance had no economic reality. It lacked fair consideration or reasonably equivalent value, and was made at a time when the Spaeths were without assets having a value sufficient to pay the debts they owed to the United States. Moreover, it left them without sufficient assets to pay the additional debt they could reasonably be expected to owe to the United States in the future.

17. The purported conveyance from BBCA, Inc. to Xemas, Inc. dated November 28, 1984, was made with an intent on the part of Joan and Jim Noske and the Spaeths to prevent the United States from collecting taxes that were or would be due from the Spaeths. It had no economic reality. It was made without fair consideration or reasonably equivalent value, and the Spaeths were at the time without assets having a value sufficient to pay the debts then owed to the United States.

18. Xemas, Inc. was sent a notice of the seizure by the Internal Revenue Service. Mary Heid (Xemas' ostensible Vice–President) received it on July 11, 1986, within two days of the seizure.

CONCLUSIONS OF LAW

■ A. In a wrongful levy action under 26 U.S.C. § 7426, there is an initial burden on the plaintiff to prove it has an interest in the property and that the government levied on the property because of tax assessments against another person, a taxpayer. The burden then shifts to the government to prove the nexus between the property and the taxpayer by substantial evidence. The plaintiff has the ultimate burden of proving that the levy was wrongful and should be overturned. *Morris v. United States*, 813 F.2d 343, 345 (11th Cir.1987); *Valley Finance, Inc. v. United States*, 629 F.2d 162, 171 n. 19 (D.C.Cir.1980), *cert. denied sub nom. Pacific Development Inc. v. United States*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981); *Arth v. United States*, 735 F.2d 1190, 1193 (9th Cir.1984).

The plaintiff met its initial burden by introducing documents evidencing the series of conveyances which ultimately vested title to the Spaeths' property in Xemas, Inc. Consequently, the burden shifted to the government to prove, by substantial evidence, a nexus between the property and the Spaeths. The government established the nexus by proving that the series of conveyances which ultimately vested title in Xemas, Inc. were all voidable under Minnesota's uniform fraudulent conveyance act.

■ B. Minnesota's uniform fraudulent conveyance act, Minn.Stat. §§ 513.20–.32, in effect during the years in question, provided that a conveyance made with actual intent to hinder, delay, or defraud creditors is voidable (§ 513.26) and that, even if an actual intent to hinder, delay, or defraud is not present, a conveyance is voidable if it rendered the transferor insolvent and was made without fair consideration (§ 513.23). Under these principles, a conveyance made with a secret understanding that the transferor shall have the benefit of the property in question is fraudulent as to subsequent creditors. *Johnson v. Union Inv. Co.*, 149 Minn. 106, 108, 182 N.W. 955, 956 (1921). These statutes are designed to prevent debtors from putting property available for the payment of debts beyond the reach of their creditors. *Kummet v. Thielen*, 210 Minn. 302, 306, 298 N.W. 245, 247 (1941). The statutes are remedial and should be liberally construed. *Lind v. O.N. Johnson Co.*, 204 Minn. 30, 40, 282 N.W. 661, 667 (1938).

Under Minnesota law, if a creditor demonstrates sufficient badges of fraud, the burden of production shifts to the party contending that a fraudulent conveyance has not occurred. *Argonaut Insurance Co. v. Cooper*, 395 N.W.2d 119, 122 (Minn. App.1986). In the present case, the United States presented sufficient evidence to meet its initial burden of production. The evidence received revealed badges of fraud, including multiple gross irregularities in the operations of the entities involved and in the transactions at issue, all accompanied by vigorous efforts by key witnesses to conceal the truth. The burden of production shifted to plaintiff and plaintiff failed to come forth with credible evidence rebutting the inference that the conveyances at issue were fraudulent.

The government was a present creditor of Spaeths for purposes of Minnesota's uniform fraudulent conveyance act when Spaeths conveyed their property to Joan Noske, trustee. The government became a creditor when the taxes arose, *Lind v. O.N. Johnson Co.*, 204 Minn. at 39, 282 N.W. 661, which, for tax year 1977, was April 15, 1978. *United States v. Wurdemann*, 663 F.2d 50, 51 (8th Cir.1981). The Spaeths owned the property at that time and did not convey it to Joan Noske, trustee, until December 1978.

The three conveyances at issue were fraudulent as to the United States because they were made with an intent on the part of Roman and Imelda Spaeth and James and Joan Noske, acting through their entities which were essentially their alter egos, to hinder, delay, and defraud the United States, a creditor of the Spaeths. Minn. Stat. § 513.26. The conveyances were also fraudulent as to the United States because they were made without fair consideration and rendered or kept the Spaeths insolvent. Minn.Stat. § 513.23. Plaintiff Xemas, Inc.,

 

as alter ego of the Spaeths and James and Joan Noske, was not a "purchaser for fair consideration without knowledge of the fraud at the time of the purchase" within the meaning of Minnesota Stat. § 513.28(1).

■ The fraudulent conveyances were voidable by the United States and could have been set aside or completely disregarded. Minn.Stat. § 513.28. The property in question belonged to the Spaeths within the meaning of 26 U.S.C. § 6331(a) at the time of the seizure and the government was authorized by that section to levy upon the property without first adjudicating the Spaeths ownership by an action under § 513.28(1)(a) of Minnesota's uniform fraudulent conveyances act. The government's levy is supported by *F.P.P. Enter. v. United States*, 830 F.2d 114, 87–2 U.S.T.C. Par. 9536 at 89,557 (8th Cir.1987) and *DiEdwardo v. First Nat'l Bank*, 442 F.Supp. 499, 500 (E.D.Penn.1977) and is consistent with the policy evidenced by Minn.Stat. § 513.28(1)(b). The government was not barred by Minnesota's statute of limitations from raising the issue of fraudulent conveyance defensively in this action in order to enforce valid tax debts. *United States v. Wurdemann*, 663 F.2d at 51.

C. Xemas, Inc. failed to meet its ultimate burden of proving that the levy was wrongful in view of the government's proof, on the theory of fraudulent conveyance, that there was a strong nexis between the Spaeths and the property.

■ D. The government's levy and sale of the property did not violate Xemas, Inc.'s due process rights. Xemas was not entitled to receive a notice of deficiency regarding the Spaeths' tax liability. 26 U.S.C. § 6212; *Valley Finance, Inc. v. United States*, 629 F.2d 162, 169 (D.C.Cir. 1980). Xemas received appropriate notice of the seizure and sale. 26 U.S.C. § 6335. Since Xemas had post-seizure remedies available under 26 U.S.C. § 7426, it was not entitled to pre-seizure judicial review. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

## ORDER

The complaint is DISMISSED.