**In re Petition of James Louis NOSKE for Review of the State Board of Law Examiners Decision.**

**No. C7–90–1633.**

Supreme Court of Minnesota.

May 24, 1991.

Jack S. Nordby, Meshbesher & Spence, Ltd., Minneapolis, for appellant.

Eric J. Magnuson, Janette K. Brimmer, Rider, Bennett, Egan & Arundel, Minneapolis, for respondent.

OPINION

PER CURIAM.

James L. Noske, a 38–year–old graduate of William Mitchell College of Law, has petitioned for review of the recommendation of the State Board of Law Examiners that he not be admitted to the practice of law in the State of Minnesota. Despite the submission of a lengthy application, prepared with the assistance of legal counsel, the Board found that Noske had failed to prove his moral character and fitness to practice law in this state. After a formal hearing conducted pursuant to Rule 104 of the Rules of Minnesota Board of Law Examiners, the Board issued detailed findings with respect to Noske's prior conduct, determining that it involved numerous instances of dishonesty, fraud, deceit, and misrepresentation to the Board, to state and federal courts, and in various business dealings, and that it violated the basic character and fitness standard of honesty, trustworthiness, diligence and reliability. Concluding that Noske had failed to establish his good moral character and fitness to practice law, the Board denied his application for admission to the Minnesota bar. Our review of the record confirms Noske's failure to demonstrate the requisite character and fitness, and we deny his application

for admission to the practice of law in this state.

The Board's findings rest in large measure on decisions in tax litigation in which Noske was characterized as a principal actor in sham transactions designed to defraud the government. *State v. Moorhouse,* No. CIV–6–84–853 (D.Minn. Feb. 18, 1986) (order granting civil contempt motion); *Xemas, Inc. v. United States,* 689 F.Supp. 917, 921 (D.Minn.1988), *aff'd,* 889 F.2d 1091 (8th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990); *Noske v. United States,* No. CIV–6–87–400 (D.Minn. Mar. 21, 1989) (order granting, *inter alia,* government's request for bank records); *Scherping v. Commissioner,* 58 T.C.M. (CCH) 1046 (1989).

After consulting counsel, Noske, a named defendant in *Moorhouse,* permitted entry of a default judgment permanently enjoining him from engaging in the organization, sale, or promotion of tax shelter businesses and directing him to supply certain information to the Internal Revenue Service. Subsequently, in proceedings in which Noske appeared *pro se,* Noske was held in contempt of court for failure to comply with the order to provide information. The federal district court, Judge Edward J. Devitt presiding, declared that the testimony uniformly identified Noske and his sister as the "masterminds of the scheme" and, noting that Noske had ample notice of and opportunity to oppose the motion for entry of the injunction and his election not to do so, the court found by clear and convincing evidence that, despite the Noskes' assertion that they were presently unable to comply with the injunction, the Noskes were in possession of the required information. *Moorhouse,* No. CIV–84–853, Order at 7.

In *Xemas* Judge Devitt found that Noske was one of three principal participants in a series of attempted real estate transfers which were "sham, devoid of economic substance and a contrived device to defraud the United States of its claim upon the property * * *." 689 F.Supp. at 919. The conveyances appeared to the court "to be a part of a larger scheme orchestrated by Joan and James Noske for the purpose of hindering and delaying efforts by the United States to collect taxes owed to it by various people." *Id.* at 921. The court concluded that Noske had perpetrated the fraud through shell corporations operated by underlings. *Id.* at 919.

Finally, in *Xemas* the court found that Noske's testimony was not worthy of belief in any important respect and, in fact, reflected a purpose to conceal the truth. *Id.* at 919, 921. Similarly, in *Scherping* the United States Tax Court concluded that Noske's testimony was not credible. 58 T.C.M. (CCH) at 1051.

Although there has not yet been a decision in *Noske v. United States,* in pretrial proceedings the United States Magistrate specifically found that Noske was directly connected with entities involved in "sham real estate transactions." *Noske,* No. CIV 6–87–400, Order at 4.

While it is true that Noske was not a party in either *Xemas* or *Scherping* and, hence, could not appeal the determinations that he lacked credibility as a witness and that he was a principal in illegal tax shelter schemes, the decisions in each of these four instances represent the considered appraisal of Noske's credibility and the evaluation of all of the evidence of his involvement in illegal tax shelters, and the Board was entitled to accept them as reliable and relevant evidence from which the Board could draw inferences with respect to Noske's character and fitness.

The Board also found that Noske repeatedly demonstrated disregard for the legal process, including two citations for civil contempt in *Moorhouse* and in *Xemas* for failure to comply with orders to provide information.

Several of the Board's findings dealt with Noske's neglect of his financial responsibilities by his failure to file state tax returns for at least nine years, and his failure to pay taxes, judgments, and an award of attorneys' fees. Furthermore, although the assessment is being contested in *Noske v. United States,* Noske is subject to an outstanding assessment of tax penalties in excess of $487,000. The Board also

found that Noske's involvement in the numerous sham real estate transactions constituted neglect of his obligations as a licensed real estate broker and, similarly, "would be found abusive had he been a licensed lawyer."

In addition, the Board found that Noske had failed to update the Board with respect to the status of litigation in which he was involved, in particular the affirmance on appeal in *Xemas* and the terms of settlement of various state court cases in which he was involved. The Board also found that Noske had failed to inform the Board of the existence of the *Scherping* litigation or that criminal charges had been brought against him.

Finally, subsequent to issuance of the Board's recommendation, a jury convicted Noske of one count of second degree assault. *State v. Noske*, No. K1–89–2162 (7th Dist.Minn., Aug. 16, 1990). Although an appeal is pending, if conviction is affirmed, the use of a firearm—namely, a Colt Python .357 magnum revolver—in the commission of the assault will subject Noske to a mandatory minimum sentence of three years' imprisonment.

The applicant for admission to the bar has the burden of establishing good moral character and fitness to the satisfaction of the Board. *In re Haukebo*, 352 N.W.2d 752, 754 (Minn.1984). In determining the applicant's character and fitness the Board considers the following factors in assigning weight and significance to the applicant's conduct:

1. The applicant's age at the time of conduct;
2. The recency of the conduct;
3. The reliability of the information concerning the conduct;
4. The seriousness of the conduct;
5. The factors underlying the conduct;
6. The cumulative effect of the conduct or information;
7. The evidence of rehabilitation;
8. The applicant's positive social contributions since the conduct;
9. The applicant's candor in the admissions process;
10. The materiality of any omissions and misrepresentations.

"Use of Information," *Character and Fitness Standards for Admission to the Bar of Minnesota*. Tested by the foregoing factors and accorded our customary deference, the Board's findings with respect to Noske's prior conduct reflecting his character and fitness to practice law in the State of Minnesota clearly withstand Noske's challenge. *In re Zbiegien*, 433 N.W.2d 871, 874 (Minn.1988).

Where, as here, patterns of misconduct reflect unfavorably on an applicant's moral character and fitness to practice law, the applicant must overcome the "presumption that similar conduct will recur in the future." *In re Haukebo*, 352 N.W.2d at 755. Except for his own testimony, Noske has failed to put forward any evidence to overcome this presumption. Accordingly, we accept the recommendation of the Board of Law Examiners and deny Noske admission to the practice of law in the State of Minnesota.