**Joanne R. DEAN, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 96–0652–CV–W–5.**

United States District Court,
W.D. Missouri,
Western Division.

Dec. 4, 1997.

Edward J. Essay, Colorado Springs, CO, for Plaintiffs.

Anita L. Mortimer, U.S. Atty's Office, Kansas City, MO, Carol E. Schultz, U.S. Dept. of Justice, Tax Div., Civil Trial Section, Washington, DC, for Defendant.

## *ORDER*

LAUGHREY, District Judge.

This case was tried to the Court on November 4 and 5, 1997. Plaintiffs, as the Trustees of the George and Catherine Irrevocable Trust, assert that a wrongful levy was made on trust assets by the Internal Revenue Service ("IRS"). The government claims that the levy was proper because George and Catherine Mossie are delinquent taxpayers and the George and Catherine Irrevocable Trust is merely the alter ego of these delinquent taxpayers. The trustees claim that the trust is not the alter ego of George and Catherine Mossie, therefore, the seizure of trust property by the IRS was wrongful and the property should be returned to the trust.

The Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. In 1950, George W. Mossie married Catherine P. Mossie.

2. In 1967, George W. Mossie and Catherine P. Mossie separated and lived apart from one another and continue to do so. During this separation, the Mossies continued to perform their respective functions in the various family businesses and were amicable in their relationship with each other.

3. Prior to their separation, the Mossies had four children, Tom Mossie, Joanne R.

Mossie (Dean), Janet A. Mossie and Linda L. Mossie.

4. In 1987, the Mossies decided to equally divide part of the real property owned in their individual names. The division was done because of their long-term separation and upon the advice of their estate planning counsel. On February 23, 1987, deeds were prepared and the property was conveyed into their respective 1987 revocable trusts.

5. In September of 1987, George W. Mossie was severely injured in an automobile accident and thereafter underwent multiple surgeries which rendered him disabled. In 1988, Catherine P. Mossie suffered a life-threatening illness from which she was not expected to recover. She also had surgery in 1989. Because of these illnesses, George and Catherine Mossie decided to transfer their assets into an irrevocable trust for the sole benefit of their children. This was done on advice of their estate planning counsel.

6. In November of 1989, the Mossies executed the George and Catherine Irrevocable Trust (hereinafter 1990 Irrevocable Trust) naming Joanne Mossie Dean and Janet A. Mossie as the trustees. The following assets were to be transferred into the irrevocable trust.

a. 20,000 shares of Summit Structural Steel.

b. Fifteen duplex units, which had been acquired in 1975 in the name of George and Tom Mossie.

c. Lake investment property which was used for family vacations.

7. The foregoing assets were not transferred into the trust until December 4, 1990. The delay was caused by the ill health of George and Catherine Mossie.

8. When the Mossies transferred their assets into the trust on December 4, 1990, they did not know that their 1988 tax return was being audited by the IRS. At that time, they did not know that they would be assessed back taxes by the IRS. Eventually, the IRS audited the Mossies' 1987, 1988, 1989, and 1990 jointly-filed tax returns and did assess back taxes against them.

9. At the time the assets were transferred into the 1990 Irrevocable Trust, the Mossies had a net worth sufficient to cover their current liabilities and the tax liability that was eventually assessed against them by the IRS.

10. After a proceeding in the United States Tax Court to determine the tax deficiency owed by the Mossies for their jointly-filed returns for tax years 1987, 1988, 1989, and 1990, the IRS assessed back taxes and penalties against the Mossies in the amount of $281,093.95.

11. On February 8, 1993, the Internal Revenue Service assessed a trust fund recovery penalty in the amount of $109,125.71 against George W. Mossie, Tom Mossie and Summit Structural Steel, relating to the unpaid employment taxes withheld from the wages of the employees of Summit Structural Steel pursuant to I.R.C. § 6672. This assessment was made against George W. and Tom Mossie because they were persons required to collect and truthfully account for and pay over to the United States the federal social security and income taxes withheld from the wages of the employees of Summit Structural Steel, Inc., for the taxable quarter ending June 30, 1992.

12. On May 4, 1994, two additional real estate holdings were transferred into the 1990 Irrevocable Trust.

a. The west 70 feet of Lot 2, Highway Lane Addition, a subdivision in Lee's Summit, Missouri.

b. Lot 85, Braeside Addition, a subdivision in Lee's Summit, Jackson County, Missouri, also known as 311 Lincolnwood.

c. Log 4, Ziegler Addition, a subdivision in Lee's Summit, Jackson County, Missouri.

These properties were titled in the name of Alamo Real Estate Company, a company owned by George and Catherine Mossie, which was dissolved in 1994 because of financial difficulty.

13. In 1995, notices of a federal tax lien were filed with the Recorder of Deeds for Jackson County, Missouri, and Morgan County, Missouri, against property held in the names of Joanne R. Dean and Janet A. Mossie, as co-trustees of the 1990 Irrevocable Trust. These liens were levied against

the trustees as the nominees or alter egos of George W. Mossie and Catherine P. Mossie.

14. The 1990 Irrevocable Trust is not the nominee or alter ego of delinquent taxpayers George W. Mossie and Catherine P. Mossie.

15. The assets of the 1990 Irrevocable Trust are controlled by the Plaintiff trustees and not George W. Mossie and Catherine P. Mossie.

a. Except for a brief period at the beginning of the trust when Catherine Mossie used old checks to pay for rental property expenses, all trust checks are signed by the trustees. Catherine Mossie used the old checks because she did not want to waste them.

b. All deeds and other transfer documents are signed by the trustees.

c. All tax returns are executed by the trustees.

d. All promissory notes are executed by the trustees.

e. All management decisions concerning the trust and its property are made by the trustees, not Catherine or George Mossie.

16. George and Catherine Mossie do receive some benefits from the trust.

a. The trustees permit Catherine Mossie to live at 311 Lincolnwood Drive, which has been the family home for the last 33 years. Catherine Mossie does not pay rent to live at 311 Lincolnwood Drive. Catherine Mossie does pay the utilities at 311 Lincolnwood Drive.

b. The trust also provides a car to Catherine Mossie and George Mossie which is available for their personal use.

c. The trustees would permit George and Catherine Mossie to stay at the family vacation home, but only Catherine has gone there since 1990 and only once or twice.

17. George Mossie did not significantly benefit when the trust loaned $275,000. to Summit Structural Steel to pay employment taxes and penalties for the period ending June 30, 1992. At the time of the loan, the majority shareholder of Summit Structural Steel was the 1990 Irrevocable Trust, and the minority shareholder was Tom Mossie. When the employment. taxes of Summit Structural Steel were paid off, the trust and

Tom Mossie, as owners of the corporation, were the primary beneficiaries. It would be illusory to say that the loan was, therefore, for the benefit of George Mossie merely because he was also liable as an officer of the corporation.

18. George and Catherine Mossie receive no money from the trust except reimbursement for minimal expenses incurred on behalf of the trust and for gasoline and auto maintenance.

19. George and Catherine Mossie have provided benefits to the trust.

a. Catherine Mossie presently manages fifteen duplex rental units which are owned by the trust. She also managed the units when they were owned by her husband and her son. She receives no compensation from the trust for her management of the rental units. She received no compensation for managing the rental property when it was owned by her husband and son.

b. Catherine Mossie is the bookkeeper for the trust and is not paid for this service.

c. George Mossie infrequently helps with the rental units by picking up parts needed for repairs.

20. After the transfer of the rental units to the trust, Catherine Mossie's responsibilities were decreased and were assumed by the trustees. Tom Mossie and the trustees now are actively involved in the maintenance, cleaning and repair of the rental units. The trustees make the ultimate management decisions concerning the rental property.

21. Other than to recommend the bank and to introduce the trustees to the bank officers, neither George nor Catherine Mossie helped the trustees to get a loan from the LaMonte Bank to pay employment taxes owed by Summit Structural Steel.

## CONCLUSIONS OF LAW

Pursuant to § 6321 and 6322 of the Internal Revenue Code (26 U.S.C., "the Code") a tax lien in favor of the United States attaches to all properties and rights to property of a delinquent tax payer from the date the tax liability is assessed. *Glass City Bank of Jeanette, Pa. v. United States*, 326

U.S. 265, 267–68, 66 S.Ct. 108, 110–11, 90 L.Ed. 56 (1945). The federal tax lien continues until the tax liability is fully satisfied or becomes unenforceable due to lapse of time. 26 U.S.C. § 6322; *Guthrie v. Sawyer,* 970 F.2d 733, 735 (10th Cir.1992).

The United States may also file tax liens against property held by a third party, (i.e., person other than the taxpayer) where the third party is the nominee or alter ego of the taxpayer. When such a lien has been filed, the United States may levy upon the property. *See, e.g., G.M. Leasing Corp. v. United States,* 429 U.S. 338, 350–51, 97 S.Ct. 619, 627–28, 50 L.Ed.2d 530 (1977); *F.P.P. Enters. v. United States,* 830 F.2d 114, 117–18 (8th Cir.1987); *Loving Saviour Church v. United States,* 728 F.2d 1085, 1086 (8th Cir. 1984).

A third party who claims an interest in the property seized by the government may challenge the seizure in a wrongful levy action in the United States District Court pursuant to Code § 7426. In such an action, the initial burden is on the Plaintiff to prove (1) an interest in the property and (2) the tax assessment is for taxes owed by another taxpayer. The burden then shifts to the government to produce substantial evidence showing a nexus between the property and the taxpayer. The Plaintiff has the ultimate burden of proving that the levy was wrongful and should be overruled. *Xemas, Inc. v. United States,* 689 F.Supp. 917, 922 (D.Minn. 1988), *aff'd,* 889 F.2d 1091 (8th Cir.1989), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990).

It appears that state law controls the question of whether a third party is the alter ego of the taxpayer. *Aquilino v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960); *Morgan v. Comm'r of Internal Revenue,* 309 U.S. 78, 82, 60 S.Ct. 424, 426, 84 L.Ed. 585 (1940). "[I]n the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property ... sought to be reached by statutes." *Id.* at 82, 60 S.Ct. at 426. While *Aquilino* and *Morgan* seem to clearly indicate that state law controls in a wrongful levy case such as this, there has been confusion over the issue. It appears that some federal courts have considered more than state law to determine whether a third-party is the alter ego of the taxpayer, e.g., *James E. Edwards Family Trust by Edwards v. United States,* 572 F.Supp. 22, 24–25 (D.N.M. 1983); *Loving Saviour Church,* 728 F.2d at 1086; *Valley Finance, Inc. v. United States,* 629 F.2d 162 (1980) ("Given the diversity of corporate structures and the range of factual settings in which unjust and inequitable results are alleged, it is not surprising that no uniform standard exists for determining whether a corporation is simply the alter ego of its owner." *Id.* at 172.) One court has held, however, that the question of whether state or federal law controls is of little importance because the standards are so similar. "The issue under either state or federal law depends upon who has 'active' or 'substantial control.'" *Shades Ridge Holding Co., Inc. v. United* States, 880 F.2d 342 (11th Cir.1989). While the Court believes that *Aquilino* and *Morgan* require application of state law in this case, the Court's conclusion would be the same even if the additional factors suggested by the government and considered in other federal cases were also taken into account.

While the Missouri courts have never considered the alter ego doctrine in the context of a trust, the doctrine has been applied in the corporate context where an effort is being made to pierce the corporate veil. *Collet v. American Nat'l Stores, Inc.,* 708 S.W.2d 273, 283 (Mo.App.1986). In such cases, the Missouri courts use a three-part test. An individual will be deemed to be the alter ego of a corporation when:

1) The individual completely dominates and controls the finances, policy and business practice of the other corporation.

2) Such control was for an improper purpose such as "fraud or wrong, or ... unjust act in contravention of [a third parties'] legal rights."

3) The alter ego's control of the corporation caused injury to the third party. *National Bond Finance Co. v. General Motors Corp.,* 238 F.Supp. 248, 256 (W.D.Mo. 1964), *aff'd,* 341 F.2d 1022 (8th Cir.1965); *K.C. Roofing Center v. On Top Roofing, Inc.,* 807 S.W.2d 545 (Mo.App.1991). The alter

ego doctrine, however, will only apply where a corporation has "no separate mind, will or existence of its own." *Thomas Berkeley Consulting Eng'r, Inc. v. Zerman,* 911 S.W.2d 692, 695 (Mo.App.1995).

 Because there is no Missouri law applying the alter ego doctrine to trusts, the court assumes that the same standard applied in the corporate context would be applied to trusts. At a minimum, Missouri law would require a showing that the alter ego of the trust so dominated it that the trust had "no separate mind, will or existence of its own." *Thomas Berkeley,* 911 S.W.2d at 695. Applying this standard to the 1990 Irrevocable Trust, it is clear that the trust is not the alter ego of George and Catherine Mossie.

Like thousands of aging adults, George and Catherine Mossie created a trust for the benefit of their children, making it irrevocable as their health deteriorated. They did not rely on a mail order product peddled by tax protesters. They set up their trust with an estate planner from a sophisticated law firm. They executed the documents necessary to transfer the legal title of their assets to the trust, and, other than a brief period when Catherine Mossie wrote checks for the rental property using old personal checks rather than trust checks, the trustees executed all documents requiring signatures by the owner of the trust property. Tax returns were executed by the trustee. Checks were signed by the trustees. The trustees decided how to spend trust assets, when to make repairs on the rental property, and the rent to be paid by tenants. The trustees borrowed and repaid money in the name of the trust. In other words, the legal control of the trust assets has consistently been exercised by the trustee, not the taxpayer. These trusts were not a sham and did "coincide with economic reality." *F.P.P. Enters.,* 830 F.2d at 117. *Also see James Edwards Family Trust,* 572 F.Supp. at 24. While it is true that there is a family relationship between the trustees and the taxpayers, the taxpayers had forever given up the right to control the disposition of the trust property and whatever advice the taxpayer gives to the trustee can be ignored. The government minimizes the importance of legal title and legal control, but the ancient law of trust is grounded in just such distinctions.

The government is correct that practical control is an important consideration, but the Court finds that the balance weighs in favor of the taxpayer on this question as well. After the trusts were created, the behavior of the trustees and settlors changed. The trustees made the decisions about the assets and also became more actively involved in the cleaning, maintenance and rental of the duplexes. While Catherine Mossie continues to be involved in the maintenance of the rental property, it is clear that she does not control the decision-making. George Mossie is no more involved in the rental property than any parent who occasionally helps their children with business advice or runs an errand for them to pick up supplies. It is not unusual for parents to continue to help their children, even after the parents' assets are placed in trust. Indeed, even where a parent's assets are transferred in fee simple presently to the children, most parents continue to help. Indeed, even if parents have never transferred any property to their children, parents help children with their property. That is how families do function and should function. It would substantially undermine trust law if such behavior was sufficient to characterize the settlor as the alter ego of the trust and negate the validity of the trust.

 The trust does not support George and Catherine Mossie. They receive no money from the trust except reimbursement for minimal expenses incurred on behalf of the trust. It is true that they both drive cars owned by the trust for their personal use and Catherine Mossie lives in the family home. But these facts alone are insufficient to characterize the trust as the alter ego of the taxpayers. A beneficiary of the trust could sue the trustees for failing to comply with a term of the trust, but small deviations from the trust are not enough to invalidate the whole trust.

The government attempted to show that the $275,000 loan made to Summit Structural Steel, Inc. was for the benefit of George Mossie because he was chairman of the board and, in that capacity, was liable for the

past-due employment taxes of the corporation. Tom Mossie, however, owned 49 per cent of the stock of Summit Structural Steel and, as president of the corporation and a stockholder, was also liable for the employment taxes. More importantly, the trust owned 51 per cent of the stock and would be directly liable if the taxes were not paid. Any benefit to George Mossie under these circumstances is illusory and is certainly not enough evidence that the trust had "no separate mind, will, or existence of its own." *Thomas Berkeley*, 911 S.W.2d at 695.

■ The fact that the trustee's parents were permitted to use the family vacation property is de minimis given that they had little or no contact with the vacation property, did not use it even when it was in their own name and such sharing would be expected. It is also significant that at the time the property was placed in trust, the taxpayers had sufficient assets to meet their tax liability and to provide for their own personal expenses. There is no evidence that the trust was created for an improper purpose.

■ The cases cited by the government in support of their argument that the alter ego doctrine is applicable to this case are not persuasive because they are factually distinguishable. The government's authority falls into two categories. The first group of cases involve trusts established by or with the assistance of tax protestors. The so-called "family" trusts give the settlor complete access to the trust property so that the settlor can use it for self-support. This is because the trustee is completely controlled by the settlor. *Loving Saviour Church*, 728 F.2d at 1086. (The taxpayer transferred all assets to a trust and the trust transferred the assets to a church which was established and controlled by the taxpayer. The taxpayer/settlor received all his support from the church which received all the income from the taxpayer's chiropractic practice); *F.P.P. Enters.* 830 F.2d at 117 (The trust lacked the essential elements of a trust. The trust failed to identify beneficiaries and the taxpayer, not the trustee, exercised control over the trust property. The taxes on the trust property and the expenses paid to maintain the trust property were deducted from the personal income tax of the taxpayer.)

In the second group of cases cited by the government, corporations have been found to be the alter ego of the taxpayer because the taxpayer controls the corporate entity. *Wilcox v. United States*, 983 F.2d 1071 (6th Cir.1992) (Table); 1992 WL 393581 (unpublished per curium opinion) (The corporation and trust were the alter ego of taxpayer/anesthesiologist because the taxpayer commingled corporate, individual and pension property and as the only shareholder and officer of the corporation and as the only trustee of the pension had complete control over the disposition of corporate and pension property. *Wolfe v. United States*, 798 F.2d 1241 (9th Cir.1986), *cert. denied*, 482 U.S. 927, 107 S.Ct. 3210, 96 L.Ed.2d 697 (1987) (Wolfe was deemed to be the alter ego of corporation/taxpayer because Wolfe was the sole shareholder of the corporation and, as the director and president of the corporation, made all corporate decisions without consulting with the other directors. Corporate expenses, including personnel costs, were paid from a sole proprietorship operated by Wolfe and all income of the corporation was put into the sole proprietorship's bank account); *Ames Investment, Inc. v. United States*, 819 F.Supp. 666 (E.D.Mich.1993), *aff'd*, 36 F.3d 1097, 1994 WL 529863 (6th Cir.1994) (A corporation was formed to purchase and manage real estate. The first property purchased was a house which was used as the personal residence of the taxpayer who was a shareholder and director of the corporation. This house was the most valuable asset of the corporation. It was never rented or used as an office. There were never any corporate meetings and there was no capitalization of the corporation or any profit from the corporation.)

The common thrust of all these cases is that the alter ego doctrine will apply when the delinquent taxpayer is really in control of the corporation or trust and so dominates it that the corporation or trust form exists, but there is no substance to it. As already discussed, the 1990 Irrevocable Trust is a valid trust instrument, created for a valid purpose, comports with economic reality, and the trustees, in most aspects, have respected the terms of the trust. To permit the alter ego doctrine to apply in such a case would re-

quire an expansion of the alter ego doctrine which the Court is unwilling to do without clearer direction from Congress or the Missouri courts. The Court, therefore, finds that the levies by the IRS against the assets of the George and Catherine Irrevocable Trust of December 4, 1990, was unlawful. The property seized by the IRS pursuant to the levies shall be returned to the trustees and all tax liens related to the unlawful levies shall be released. The Plaintiffs' request for damages and attorneys' fees is denied.

One troubling aspect of this case is the fact that the family home was deeded to the trust but Catherine Mossie has continued to control and occupy the home since the formation of the trust. The trustees acknowledged at trial that they and the Mossies have always understood that Catherine Mossie would continue to occupy the house until her death. Catherine Mossie also holds a deed of trust against the house which secures a promissory note in favor of Catherine Mossie. That promissory note is in default and has been since the property was transferred into trust. Catherine Mossie has the beneficial interest in the property during her lifetime and holds the key to the legal title at any time that she chooses to foreclose on the property. While it is true that the trust holds legal title until foreclosure, effectively Catherine Mossie controls the future disposition of the family home. While an argument could be made that the house was never a part of the trust, even though legal title was transferred to it, the government has insisted during this litigation that the house was properly placed in trust and is subject to the trust. The government's position, therefore, forecloses a finding that the house is subject to the IRS levy because it is the property of the delinquent taxpayer, Catherine Mossie, not the property of the trust. The Court's decision in this case, however, does not preclude the IRS from levying on property owned by Catherine Mossie, such as the promissory note and deed of trust on the property at 311 Lincolnwood. The only issue before this Court, however, is whether the levy by the IRS against the assets of the trust was wrongful. The Court has rejected the government's argument that the 1990 Irrevocable Trust is the alter ego of George and Catherine Mossie and, therefore, the IRS levy on the trust property was wrongful and the trust property must be returned to the trust and the liens released from the trust property.

### CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Judgment be entered in favor of Plaintiff trustees.

2. The property of the 1990 Irrevocable Trust which has been seized by the IRS to satisfy the tax liability of George and Catherine Mossie shall be returned to the trustees.

3. The 1995 tax liens filed with the Recorder of Deeds for Jackson County, Missouri, and Morgan County, Missouri, against property held in the name of Joanne R. Dean and Janet A. Mossie as co-trustees of the 1990 Irrevocable Trust shall be forthwith release.

4. The Plaintiffs' request for damages and attorneys' fees is denied.